IN RE THE APPLICATION OF
MIRNA JUDITH RODRIGUEZ
CARNELLI,

        *Petitioner,*

        *v.*

TANCREDO ANTONIO CANABE
PAZ,

        *Respondent.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No: 10-3083-(SRC)

# RESPONDENT'S  MEMORANDUM OF LAW

Respectfully submitted by:

Anthony H. Guerino, Esq.
92 Elm Road
P.O. Box 1982
Newark, New Jersey 07102

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                      i.

TABLE OF AUTHORITIES                                                   ii.

NATURE OF ACTION                                                       1

STATEMENT OF FACTS                                                     1

LEGAL ARGUMENT                                                         4

    I.  EMERGENT RELIEF                  4

    II.  THE REQUIREMENTS OF THE HAGUE CONVENTION
WILL NOT BE MET IN THIS MATTER                                         5

    III. THE FOREIGN JUDGMENT OF DIVORCE
CANNOT BE ENFORCED                                                     8

CONCLUSION                                                             9

# TABLE OF AUTHORITIES

## Cases

Castillo v. Castillo, 597 F. Supp.2d 432,  D.Del., 2009                6

de Silva v. Pitts, 481 F.3rd 1279, C.A. 10  (Okla.), 2007             6

England v. England, 234 F.3rd 268, C.A. 5 (Tex.), 2000               7

Fantony v. Fantony, 36 N.J. Super. 375, (Ch. Div. 1955)              8

Journe v. Journe, 911 F.Supp. 43, D.Puerto Rico 1995               7

Lalo v. Malca, 318 F.Supp. 2nd 1152, S.D.Fla. 2004.                 7

Lea v. Lea, 18 N.J. 1, 1955                                         8

## Statutes and Rules

International Child Abduction Remedies Act,
42 U.S.C., paragraphs 11601-11611 (2010)                           1

Rule 65 of the Federal Rules of Civil Procedure                    4, 5

## Conventions

Hague Convention on the Civil Aspects of
International Child Abduction, October 25, 1980,
99 U.S.T. 11, 19 I.L.M. 1501                                       1, 4, 5, 7

## NATURE OF ACTION

Although this action is brought under the legal authority of the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, 99 U.S.T. 11, 19 I.L.M. 1501 (hereinafter "Hague Convention"), and the International Child Abduction Remedies Act, 42 U.S.C., paragraphs 11601-11611 (2010) (hereinafter "ICARA"), this matter is essentially a custody dispute between parents. The ultimate decision by this Court will require an examination of the "best interests" of the child.

## STATEMENT OF FACTS

Respondent does not dispute the fundamental facts set forth by the Petitioner and will not recite the facts previously set forth in the Petitioner's Brief. However, there are additional facts that clearly favor the Respondent's request to be awarded primary residential custody of his son that will be highlighted in the Respondent's Certification and hopefully when explored will aid the Court in making determination as to the "best interests" of the child.

Initially, it should me noted that most of the interim relief requested by the Petitioner in her application for a preliminary injunction is not opposed by the Respondent.

The Petitioner requests that the child be produced. The Respondent is most anxious to produce the child before this Court and will do so as soon as the Court makes the request.

Likewise, the Petitioner's request to have the Respondent surrender the child's travel documents is not opposed by the Respondent. This request is ironic because it is the Petitioner who has moved the child first to Uruguay, then to Spain, then to England, and finally back to the United States. The Respondent has never left the State of New Jersey with the child!

The only relief requested by the Petitioner that is opposed by the Respondent is the Petitioner's request to have the Respondent post a bond with this Court, as the Respondent has very limited financial means and required the assistance of his family simply to file these initial pleadings with this Court.

Daniel was born in Belleville, New Jersey and lived in New Jersey as a United States citizen from the date of his birth in 1996 until he was removed to Uruguay by the Petitioner in 2005. Even after the child's removal from the United States by Petitioner, Daniel has spent every summer vacation with the Respondent in New Jersey. He has a large family, including aunts, uncles and cousins, all living in Kearny, New Jersey. Daniel has always had a close relationship with these family members whom he has known since birth.

Daniel has expressed a clear desire to remain in the United States and has no desire to again re-locate to a new country (Argentina) and begin a new life with no friends or family other than his mother.

The Petitioner stresses that the Judgment of Divorce gives her custody of Daniel. What she fails to address is that she traveled to Uruguay from New Jersey under the pretext of obtaining travel documents to travel to Spain. She failed to disclose to the Respondent that she was about to file for a divorce while obtaining her travel documents

2

in Uruguay.   The Petitioner remained in Uruguay for thirty-five days, managing to somehow utilize the courts of Uruguay to obtain a divorce from the Respondent.  Why the Petitioner did not file pleadings with the Superior Court of New Jersey, Family Part, where the parties resided and where Daniel  lived his entire life, is not addressed by the Petitioner.

Additionally, the custody paragraph of the "Agreement" section of the divorce documents attached to the Petitioner's Certification indicates that the Respondent "will continue to exercise custody over our daughter, Virginia Natalie", and the Petitioner will exercise custody over our son Daniel Nicholas."  Nowhere is it indicated or implied that the respective custody's are permanent.  The far better solution and general practice in New Jersey is for the custody to be primary residential with both parents participating in making important decisions for the children that may have a serious impact on the health, education, and welfare of the children.  Minor day to day decisions of course would be made by the residential parent.

Further, while the Petitioner states that "Both the Petitioner and Respondent were represented by attorneys and entered into a settlement agreement.", she fails to mention that the Respondent was contacted by her attorney whom he never met, spoke to once on the telephone, and served papers that he urged the Respondent to sign. The Settlement Agreement that is relied upon by the Petitioner was never negotiated nor provided to the Respondent until after the Petitioner was living in Spain with Daniel.

Finally, the Respondent never agreed to permit Daniel to move yet once again to a new country (Argentina) with which neither Daniel nor any of the parties have any ties. To the contrary, when the Petitioner explained to the Respondent that she was moving

once again to "care for her new husband's father", the Respondent and Daniel decided that enough was enough. Neither Daniel nor the Respondent ever intended or agreed to force Daniel to move to a strange country to begin yet another childhood.

## LEGAL ARGUMENT

## I. EMERGENT RELIEF

Although the Respondent does not concede that all of the requirements of Rule 65 of the Federal Rules of Civil Procedure have been met, the Respondent does not oppose the emergent relief requested by the Petitioner. However, the Petitioner's application is void of the essential requirement of Rule 65, in that, reading all of the Petitioner's moving papers, she has not demonstrated that she has a reasonable probability of success on the merits.

Specifically, the Petitioner's Brief requests that an emergent order be issued "prohibiting the Respondent from removing the minor child from the jurisdiction of this Court, taking the child's travel documents into safekeeping, and requiring Respondent to post a bond in the amount determined by the Court." The Petitioner also requests that "this action (be) scheduled in an expedited manner in order to resolve the legal issues raised in her Petition."

As the Court will note from the Petition and Certification filed by the Petitioner in this matter, the only party to ever leave the State of New Jersey and travel to a foreign countries is the Petitioner. The Respondent has lived in New Jersey since he emigrated from Uruguay. The Respondent will gladly agree to remain in Kearny, New Jersey with

Daniel and surrender Daniel's travel documents to the Court for safekeeping. Likewise, the Respondent will welcome an expedited hearing in this matter and looks forward to a determination as to what is in the best interests of his son Daniel.

The only objection the Respondent has to the Petitioner's application is the requirement that he post a bond. A bond serves no purpose, as the Respondent has done nothing wrong, has not attempted to avoid this matter, has remained in New Jersey with Daniel, as agreed between the parties, has no choice but to follow the dictates of any Order issued by the Court.

## II.  THE REQUIREMENTS OF THE HAUGE CONVENTION WILL NOT BE MET IN THIS MATTER

Although a plenary hearing will certainly produce more than ample evidence to support the Respondent's application, the documents submitted by the Petitioner clearly demonstrate that the requirements of the Hauge Convention On The Civil Aspects of International Child Abduction (hereinafter "Hague Convention") as implemented by the International Child Abduction Remedies Act, 42 U.S.C. paragraphs 11601-11611 (2010) (hereinafter ICARA), have not been met.

Article 13 of the Hague Convention overrides all other provisions of the Hague Convention. Article 13 states that "Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person . . . which opposes (the child's) return establishes that:

5

a) the person . . . having the care of the person of the child . . . consented to our subsequently acquiesced in the removal or retention; or

b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

There is ample evidence in the Certifications submitted by both the Respondent and the child that the Petitioner acquiesced to Daniel's remaining with the Respondent, and that the moving of the child from New Jersey to Uruguay, then moving the child to Spain, then moving the child to England, and now attempting to move the child to Argentina has and will continue to expose the child to at least some psychological harm. As suggested by the Petitioner, an expedited hearing should be conducted to determine what is in fact in the best interests of Daniel.

Article 13 of the Hague Convention further permits the "judicial or administrative authority" to "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." It is respectfully requested that, in light of the fact that Article 4 of the Hague Convention states that the Hague Convention does not apply to a child once the child attains the age of 16, Daniel, at age 14, is certainly of an age and maturity at which it is appropriate to take his views and desires into account.

In Castillo v. Castillo, 597 F. Supp.2d 432, D.Del., 2009, the court permitted the "Wishes of the Child" exception to the Hauge Convention and took into account the wishes of an 11 year old child. Likewise, in de Silva v. Pitts, 481 F.3rd 1279, C.A. 10 (Okla.), 2007, the court, after interviewing the child in camera, accepted the child's wishes.

6

In addition to the support afforded the Respondent under Article 13 of the Hague Convention, the basic premises upon which the Hague Convention is based supports the Respondent. "The primary aims of the Convention . . . are to restore pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court. England v. England, 234 F.3rd 268, C.A. 5 (Tex.). See also Lalo v. Malca, 318 F.Supp. 2nd 1152, S.D.Fla. 2004.

Finally, the Hague Convention requires that any custody dispute brought under the Hague Convention must be litigated in the place of habitual residence of the child. Journe v. Journe, 911 F.Supp. 43, D. Puerto Rico, 1995. This requirement is set forth in Article 4 of the Hague Convention. The Declaration Establishing Habitual Residence of the Child that has been submitted by the Petitioner clearly states that the last habitual residence of the child is the United Kingdom. However, the Central Authority to which the Petitioner has applied for this Petition is the Central Authority of Argentina.

Applying the legal principals set forth in England v. England, Lalo v. Malca, and Journe v. Journe, supra., it is clear that it is the Petitioner who has crossed the border to forum shop. It is the Petitioner who has moved from country to country. It is the Petitioner who, while the child's habitual residence was the United Kingdom, left the child in New Jersey with the Respondent, and then moved to Argentina without the child. The Petitioner then expected the child, who she admits left England for New Jersey with a round-trip ticket, to simply move yet once again to a new country, a country to which he has no ties, no family nor friends.

## III.   THE FOREIGN JUDGMENT OF DIVORCE CANNOT BE ENFORCED

It is well settled in New Jersey that any enforcement of a foreign judgment of divorce is based on the doctrine of comity controlled by the public policy of the state whose recognition is invoked, not on federal full faith and credit.  Kugler v. Haitian Tours, Inc., 120 N.J. Super. 216, (Ch.Div. 1972).  Recognition should be accorded a foreign divorce if the foreign court's action conformed to accepted notions of due process of law in New Jersey.  Fantony v. Fantony, 36 N.J. Super. 375, (Ch. Div. 1955).  It is likewise long settled New Jersey law that even a divorce in a "sister state" is always open to attack.  Lea v. Lea, 18 N.J. 1, 1955.

It is respectfully submitted that the Petitioner's own pleadings give rise to serious questions regarding the legality of the parties' divorce and the sustainability of the custody portions of the foreign divorce decree's enforceability upon Daniel.

In paragraph 6 of the Petitioner's Certification she admits that she "traveled to Uruguay with my son to obtain the necessary paperwork to permit my son to move to Spain with me."  She goes on to admit that "In the meantime, while I was in Uruguay, I took the opportunity to file for divorce."  There is no question that the Petitioner did not travel to Uruguay to obtain a divorce;  it was an afterthought that came to her while she was waiting for her paperwork to travel to Spain.

The Petitioner admits that she left Uruguay in 1990, and remained in the United States until she returned to Uruguay fifteen (15) years later in 2005.  She was in Uruguay for only thirty-five (35) days.

8

The Petitioner alleges that the Respondent was represented in Uruguay by an attorney whom he never met and who apparently also represented her. Even if the Court accepts the Petitioner's allegations, the attorney was selected, retained and paid by the Petitioner. Clearly this does not even come close to legal representation. However, the Respondent clearly states that the only attorney that he spoke to was an attorney who stated that he represented the Petitioner. In either case, the Respondent never met in person with the attorney, as the attorney was in Uruguay while the Respondent was in New Jersey.

## CONCLUSION

For the reasons set forth herein, it is respectfully requested that a plenary hearing be conducted in this matter and that primary residential custody be granted to the Respondent.

Dated: 11/11/10

_____
**Anthony H. Guerino, Esq.**
Attorney for the Respondent

9