Anthony H. Guerino Esq.
92 Elm Road
P.O. Box 1982
Newark, New Jersey 07102
(973) 589-7673
Attorney for Respondent

IN RE THE APPLICATION OF
MIRNA JUDITH RODRIGUEZ
CARNELLI,

*Petitioner,*

vs.

TANCREDO ANTONIO CANABE
PAZ,

*Respondent*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No: 10-3083 – 3083 (SRC)

CERTIFICATION OF RESPONDENT
TANCREDO ANTONIO CANABE PAZ

I, Tancredo Antonio Canabe Paz do hereby certify as follows:

1. I reside at 354 Forest Street, Kearny, New Jersey 07032, with my son Daniel Nicolas Canabe, who is the subject of these proceedings.

2. I married the Petitioner, Mirna Judith Rodriguez Carnelli in a civil ceremony in Uruguay on May 3, 1988.

3. Our daughter, Virginia Natalie Canabe, was born of the marriage on October 7, 1988 in Uruguay.

4. On or about June 1988, I emigrated from my native Uruguay to Kearny, New Jersey in the United States of America to obtain a better life for me and my family.

5. On or about December 1990, when I was able to save enough money, I paid for my wife and daughter to come to the United States and we reunited as a family in Kearny, New Jersey.

6. On September 20, 1996, our son Daniel Nicolas Canabe was born of the marriage, and is a United States Citizen.

7. On or about the end of 2001 or beginning of 2002, my wife and I separated. I moved to an apartment in Harrison, New Jersey, and my wife, together with my son, Daniel, and daughter, Virginia, remained in the marital residence at 300 Kearny Avenue, Kearny, New Jersey.

8. On or about the end of August or beginning of September 2003, our daughter, Virginia, moved in with me.

9. On or about September 2004, my wife lost her job and subsequently her apartment, so our son Daniel came to live with me until she took him with her to Uruguay on or about January 17, 2005.

10. Neither I nor my wife are citizens of the United States. My wife wanted to relocate to Spain with our son, Daniel, but could not do so from the United States because of her immigration status.

So, on or about January 17, 2005, she and my son went to Uruguay to obtain the necessary documentation to travel to and relocate in Spain, where she had a promise of employment.

11. Unbeknown to me, within the short period of time she was in Uruguay, she filed for Divorce even though neither of us had resided there for over fifteen (15) years.

12. Within approximately one (1) month thereafter, on or about February 22, 2005, my wife and son Daniel went to live in Spain.

13. On or about the beginning of March 2005, I received a phone call from a male, who identified himself as an attorney who was working for my spouse. He said he would be sending me papers to finalize our divorce. I never spoke to him again but did receive papers from him within about two (2) weeks thereafter. I was emotionally upset and despondent, so I signed these papers without reviewing them or consulting

with an attorney. I have since found out that a Divorce Decree was entered on or about September 28, 2005.

14. On or about September 23, 2005, my now ex-wife, married Norberto D'Amico with whom our son Daniel lived with in Spain.

15. On or about January 2009, my ex-wife, her new husband, and our son Daniel again relocated to London, England, because she was offered yet another new job.

16. Each summer for the years 2005, 2006, 2007 and 2008, our son Daniel visited with me from approximately July thru September, and then returned to his Mother.

In 2009, Daniel, likewise came to the United States around July, with the intention to return to England where he then resided with his Mother and Step-Father. I, in fact, purchased a round trip ticket on June 26, 2009, whereby he would be flying from London to Newark on July 25, 2009, and from Newark to London on September 1, 2009. Please find copy of same attached hereto as **EXHIBIT A**.

17. Also, in 2006, my ex-wife sent our son, Daniel, back from Spain to live with me because of her personal problems. I enrolled him in the Kearny School System and he did well. Please find a copy of his Report Card attached hereto as **EXHIBIT B**.

18. During Daniel's visit with me during the summer of 2009, my ex-wife advised me during the latter part of July, that she intended to relocate, yet another time, in Argentina. She initially consented to Daniel being enrolled in the Kearny School System with the intent to finish the school year, at which time she would be settled in Argentina and would speak to him regarding his preference of where he wanted to live. She has now reneged on her promise, causing our son, who wishes to remain and grow up in the United States, a great deal of anxiety.

My ex-wife has been duplicitous in her representations as to what her intentions were with respect to Daniel's education and her long term goals as evidenced in the letter she sent to Betsy, Daniel's Aunt, dated July 22, 2009. Please find a copy of same attached hereto as **EXHIBIT C.**

19. Daniel has expressed his feelings both to me and to his Mother about not wanting to relocate in Argentina, and wishing to stay in the United States where he has stability and family support from his Sister, Virginia; his Uncles, Oscar, Fabian, Fernando, Jimmy, and their respective spouses; his Aunt Patricia and her spouse; and his cousins, Alex, Michael, Maria, Victoria, Jimmy, Katherina, Anastio, Camilla, Gerardo, Darwin, Luciano, Priscilla, and Sophia, all of whom live in Kearny, and with whom he celebrates birthdays, holidays, and family events.

20. I do not desire nor intend to thwart the relationship between Daniel and his Mother, and would encourage and support reasonable visitation between them, either here in the United States, or abroad, but do insist that his education, social development, health and happiness be our priority. He is a mature young man, who is doing well in school, has integrated socially, and has many friends, and enjoys stability and a great deal of family love and support.

21. In order to assure that Daniel's well being is the top priority, I have made an appointment with Dr. Sharon Montgomery, a well recognized Child Psychologist, to interview, test and evaluate him as to what would be in his best interest, not mine or his Mother's.

I trust that the Court will take into consideration all relevant factors and render a decision which is in Daniel's best interest that will enable both his Mother and I to have a loving, meaningful relationship with him.

I hereby certify that the foregoing statements made by me are truthful and that if I have misrepresented the truth, I am subject to penalty as provided by law.

Date: 11/11/10

Tancredo Antonio Canabe Paz